IN THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF MARYLAND

MARYLAND SHALL ISSUE, INC., *et al.,*
9613 Harford Rd., Ste C #1015
Baltimore, Maryland 21234-2150,

      *Plaintiffs,*           No.:   1:22-cv-00865-SAG

      v.

ANNE ARUNDEL COUNTY,
MARYLAND
44 Calvert Street
Annapolis, MD 21401,

      *Defendant.*

**MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION FOR A
PRELIMINARY INJUNCTION AND TEMPORARY RESTRAINING ORDER
AND IN SUPPORT OF
PLAINTIFFS' ALTERNATIVE MOTION FOR SUMMARY JUDGMENT**

**INTRODUCTION**

Plaintiffs respectfully move this Court for an order granting a preliminary injunction that enjoins defendant Anne Arundel County, Maryland from enforcing Bill 108-21 as against the plaintiffs in this case. Alternatively, plaintiffs respectfully move this Court for an order granting summary judgment. These motions are supported by the accompanying affidavits of each of the named plaintiffs verifying the truth of the allegations set forth in the Complaint, filed April 4, 2022. A Preliminary Injunction or Summary Judgment should be granted on the face of the pleadings as there are no disputed issues of fact and plaintiffs are entitled to judgment as a matter of law.

Under Bill 108-21, Anne Arundel County prepares "literature relating to gun safety, gun training, suicide prevention, mental health, and conflict resolution and distribute the literature to all establishments that sell guns or ammunition." Bill 108-21 then requires that licensed firearms dealers in the County, including the plaintiff dealers in this case, make this literature "visible and available"

at the business establishments of licensed firearms dealers and to "distribute the literature" to "all purchasers of guns or ammunition" at such locations. Other than Maryland Shall Issue, Inc., each plaintiff to this action is a licensed firearms dealer subject to Bill 108-21, and each plaintiff objects to being commandeered as a distributor for the County's literature. Bill 108-21 constitutes "compelled speech" in violation of the plaintiff dealers' First Amendment rights. Bill 108-21 also violates the First Amendment rights of persons who visit or do business with a dealer in Anne Arundel County by effectively chilling the speech of customers who may disagree with the County's preferred message

## STATEMENT OF THE CASE

**A. Bill 108-21**

On January 10, 2022, the Defendant, Anne Arundel County, Maryland ("the County") signed into law Bill 108-21 ("the Bill"), a copy of which is attached to the Complaint as Exhibit A and is incorporated herein in its entirety by reference. Bill 108-21 became effective on April 10, 2022. Bill 108-21 amends the Anne Arundel County Code, Article 12, Title 6, Section 12-6-108, to provide in subsection (A) through (C):

> (A) **Duties of Health Department**. The Anne Arundel County health department shall prepare literature relating to gun safety, gun training, suicide prevention, mental health, and conflict resolution and distribute the literature to all establishments that sell guns or ammunition.
>
> (B) **Requirements.** Establishments that sell guns or ammunition shall make the literature distributed by the health department visible and available at the point of sale. These establishments shall also distribute the literature to all purchasers of guns or ammunition.

- 1 -

C) **Enforcement.** An authorized representative of the Anne Arundel County Health Department may issue a citation to an owner of an establishment that sells guns or ammunition for a violation of subsection 8 (b).

Bill 108-21 amends the Anne Arundel County Code, Article 12, Title 6, Section 12-6-108(D), to impose a penalty for any violation of Bill 108-21, stating that "a violation of this section is a Class C civil offense pursuant to § 9-2-101 of this code." A Class C civil offense under Section 9-2-101 of the County Code is punishable by a fine of "$500 for the first violation and $1,000 for the second or any subsequent violation."

The County's literature takes the form of two pieces. The first is a pamphlet entitled "Firearms and Suicide Prevention" published jointly by the National Shooting Sports Foundation ("NSSF") and the American Foundation for Suicide Prevention. A copy of that pamphlet, as downloaded from the NSSF website at https://bit.ly/3rgLt6r, is attached as Exhibit B to the Complaint and is incorporated herein in its entirety by reference. The text and layout of this downloaded copy is identical to the printed copy distributed by the County. The second piece of literature distributed by the County on or about April 8, 2022, is a single page measuring 6" by 6," setting forth information concerning County "resources" for "conflict resolution." A copy of that piece of literature is attached as Exhibit C to the Complaint and is incorporated herein in its entirety by reference.

B.  **The Parties**

Plaintiff Maryland Shall Issue, Inc. ("MSI") is a Maryland corporation, located at 9613 Harford Rd., Ste C #1015, Baltimore, MD 21234-2150. MSI is an Internal Revenue Service certified, Section 501(c)(4), non-profit, non-partisan membership organization with approximately 2000 members statewide. MSI is dedicated to the preservation and advancement of gun owners' rights in Maryland. It seeks to educate the community about the right of self-protection, the safe handling of

firearms, and the responsibility that goes with carrying a firearm in public. The purposes of MSI include promoting the exercise of the Second Amendment right to purchase arms. MSI engages in education, research, and legal action focusing on the constitutional right to privately own, possess and carry firearms. MSI has members who live in Anne Arundel County and purchase firearms and/or ammunition from firearms dealers in Anne Arundel County. Each of the other plaintiffs in this matter is a corporate member of MSI.

MSI brings this suit on behalf of its members who are firearms dealers in Anne Arundel County, and who are required to display and distribute County literature by Bill 108-21, and who are thus directly regulated by Bill 108-21. Complaint ¶ 9. MSI also brings this suit in its representational capacity on behalf of its individual members who visit or do business with Anne Arundel County dealers and sellers of ammunition and who are thus subject to the forced receipt or display of literature required by Bill 108-21. (Id.). MSI has one or more individual members who live in Anne Arundel County and/or have purchased or intend to purchase firearms and/or ammunition from dealers in Anne Arundel County.

The remaining plaintiffs, FIELD TRADERS, LLC, CINDY'S HOT SHOTS, INC., PASADENA ARMS, LLC, and WORTH-A-SHOT, INC. (hereinafter collectively "plaintiff dealers"), are all private federally and Maryland State licensed firearms dealers located in Anne Arundel County. Each of these plaintiff dealers regularly sells firearms, including regulated firearms, as well as ammunition for firearms. Each of the plaintiff dealers objects to Bill 108-21 because the Bill commandeers it to act as a mouthpiece and conduit for County communications mandated by Bill 108-21. Each of the plaintiff dealers alleges that Bill 108-21 requires it to involuntarily display and distribute County literature with which the plaintiff disagrees and each alleges that it does not wish to be a party to these communications or to be seen by its customers and potential customers as endorsing

- 3 -

implicitly or otherwise the County's messages and opinions set out in the literature required by Bill 108-21. Each of the plaintiff dealers is a corporate member of MSI. Complaint ¶¶ 10-13. Each of the plaintiff dealers alleges that it is regulated directly by Bill 108-21 and each alleges that it has standing to sue on its own behalf and on behalf of its customers and other persons who are similarly situated. Id. at ¶ 14.

The Defendant is Anne Arundel County, Maryland. Anne Arundel County ("the County") is a chartered home rule county within the meaning of Article XI-A of the Maryland Constitution. Bill 108-21, challenged herein, is a County ordinance and thus an official policy of the County. The County may thus be named and sued *eo nomine* under 42 U.S.C. § 1983. *Monell v. Department of Social Services*, 436 U.S. 658 (1978); *Starbuck v. Williamsburg James City County School Board*, 28 F.4th 529, 533-34 (4th Cir. 2022); *Lytle v. Doyle*, 326 F.3d 463, 471 (4th Cir. 2003). Complaint ¶ 15.

**ARGUMENT**

**I.      STANDARD OF REVIEW**

  **A.      Summary Judgment**

Pursuant to Rule 56, FRCP, plaintiffs request summary judgment granting declaratory relief and a permanent injunction enjoining the County from enforcing Bill 108-21 against them or any other member of MSI. Rule 56 requires that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The party seeking summary judgment has the burden of establishing the genuine absence of disputed issues of material fact. See *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986).

To defeat a motion for summary judgment, the defendant must do more than create "some alleged factual dispute between the parties." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986). Rather, the defendant must demonstrate a genuine issue to a material fact through admissible

- 4 -

evidence. Thus, the "non-moving party must present sufficient evidence such that reasonable jurors could find by a preponderance of the evidence for the non-movant, for an apparent dispute is not genuine within contemplation of the summary judgment rule unless the non-movant's version is supported by sufficient evidence to permit a reasonable [finder of fact] to find the facts in his [or her] favor." *Sylvia Dev. Corp. v. Calvert Cnty.*, 48 F.3d 810, 818 (4th Cir. 1995). 'Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial.'" *Ricci v. DeStefano*, 557 U.S. 557, 586 (2009) (quoting *Matsushita v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

The questions presented on this motion are pure questions of law and there are no material disputed issues of fact. The factual predicates for this suit are verified by the accompanying declarations of the plaintiffs, each of which attest to the factual allegations of the Complaint. The material facts are simply stated. First, the County has enacted Bill 108-21. (Complaint Exhibit A). Second, pursuant to Bill 108-21, the County has prepared the literature required by Bill 108-21 and distributed that literature to dealers County-wide. (Complaint, Exh. B & C). Third, each of the plaintiff dealers are Anne Arundel County dealers who are subject to Bill 108-21, and thus each must "display" and "distribute" this literature, as required by Bill 108-21. Fourth, each of the plaintiffs object to this forced display and distribution of the County's literature. Complaint ¶¶ 9-13. Fifth, each of the plaintiff-dealers has received this literature and each such dealer is complying with Bill 108-21 only in order to avoid the fines that would be imposed under Bill 108-21 for non-compliance. See Declarations of plaintiff-dealers at ¶ 3. But for Bill 108-21, the plaintiff dealers would not display or distribute the literature distributed to the dealers by the County. (Id.). A violation of these obligations to display and distribute is punishable by a civil fine of $500 for the first offense and $1,000 for a

second and subsequent offenses. Complaint ¶ 6. The County cannot reasonably dispute any of these basic facts.

### B.  Preliminary Injunction and Temporary Restraining Order

In the alternative, plaintiffs have moved this Court for an order granting a preliminary injunction and a temporary restraining order ("TRO") barring the County from enforcing Bill 108-21. A party seeking a preliminary injunction or temporary restraining order must establish the following elements: (1) a likelihood of success on the merits; (2) a likelihood of suffering irreparable harm in the absence of preliminary relief; (3) that the balance of equities tips in the party's favor; and (4) why the injunction is in the public interest. *Winter v. Natural Res. Def. Council, Inc.,* 555 U.S. 7, 20 (2008). "A preliminary injunction is an extraordinary remedy intended to protect the status quo and prevent irreparable harm during the pendency of a lawsuit." *Di Base v. SPX Corp.*, 872 F.3d 224, 230 (4th Cir. 2017) (collecting case law). "[A] preliminary injunction can also act to restore, rather than merely preserve, the status quo, even when the nonmoving party has disturbed it." Id. at 231.

While all four elements for a preliminary injunction must be satisfied (id.), irreparable injury and a likelihood of success are the "most critical." *Nken v. Holder*, 556 U.S. 418, 434 (2009). The first element of a likelihood of success "does not require "a 'certainty of success,'" but rather only that "the plaintiff 'must make a clear showing that he is likely to succeed at trial.'" *St. Michael's Media, Inc. v. Mayor and City Council of Baltimore*, --- F.Supp.3d ----, 2021 WL 4772927 at 14 (D. Md. 2021) (quoting *Di Biase v.* 872 F.3d at 230). While a plaintiff must also show irreparable harm, *Benisek v. Lamone*, 138 S. Ct. 1942, 1944 (2018), "[t]he loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Elrod v. Burns,* 427 U.S. 347, 373 (1976) (plurality opinion). See also *Legend Night Club v. Miller*, 637 F.3d 291, 301 (4th Cir. 2011) (same). Similarly, the public interest is served, as a matter of law, by enjoining the

unconstitutional actions of a locality. See, e.g., *Legend Night Club*, 637 F.3d at 303 ("upholding constitutional rights is in the public interest"). While the plaintiff must show that the balance of equities favors it, "[a] state is 'in no way harmed by issuance of a preliminary injunction which prevents the state from enforcing restrictions likely to be found unconstitutional. If anything, the system is improved by such an injunction.'" *Giovani Carandola, Ltd. v. Bason*, 303 F.3d 507, 521 (4th Cir. 2002) (citation omitted). As detailed below, all of these elements are easily satisfied here.

## II.   BILL 108-21 VIOLATES THE FIRST AMENDMENT RIGHTS OF PLAINTIFFS

The Complaint alleges that Bill 108-21 violates the First Amendment rights of plaintiffs. "The First Amendment is applicable to the States through the Due Process Clause of the Fourteenth Amendment." *Virginia State Bd. of Pharmacy v. Va. Citizens Consumer Council Inc.*, 425 U.S. 748, 749 n.1 (1976); *Lovell v. Griffin*, 303 U.S. 444, 450 (1938). This violation is multifaceted and ongoing.

The Supreme Court's "leading First Amendment precedents have established the principle that freedom of speech prohibits the government from telling people what they must say." *Rumsfeld v. Forum for Academic and Institutional Rights, Inc.*, 547 U.S. 47, 61 (2006). "[N]o official, high or petty, can prescribe what shall be orthodox in politics, nationalism, religion, or other matters of opinion or force citizens to confess by word or act their faith therein." *West Virginia Bd. of Ed. v. Barnette,* 319 U.S. 624, 642 (1943). Any state action "which forces an individual ... to be an instrument for fostering public adherence to an ideological point of view" is unacceptable under the First Amendment. *Wooley v. Maynard*, 430 U.S. 705, 717 (1977).

Persons have a First Amendment "right not to utter political and philosophical beliefs that the state wishes to have said." *Greater Baltimore Center for Pregnancy Concerns, Inc. v. Mayor and City Council Of Baltimore,* 879 F.3d 101, 111 (4th Cir.), *cert. denied,* 138 S.Ct. 2710 (2018). There is a

First Amendment right "not to speak" because "the right to refrain from speaking is concerned with preventing the government from "[c]ompelling individuals to mouth support for views they find objectionable.'" *Overbey v. Mayor of Baltimore*, 930 F.3d 215, 222 (4th Cir. 2019) (quoting *Janus v. Am. Fed'n of State, Cty., & Mun. Employees, Council*, 138 S.Ct. 2448, 2463 (2018). Under the First Amendment, the government may not command a person to serve as a "conduit" for government speech, and may not be "'forced either to appear to agree with [the intruding leaflet] or to respond.'" *Hurley v. Irish-American Gay, Lesbian and Bisexual Group of Boston*, 515 U.S. 557, 575 (1995) (quoting *Pacific Gas & Electric Co. v. Public Utilities Comm'n,*, 475 U.S. 1, 15 (1986) (plurality opinion) (brackets the Court's).

By its terms, Bill 108-21 compels a dealer to "display" and "distribute" County-sponsored literature directed at "gun safety, gun training, suicide prevention, mental health, and conflict resolution." This literature and requirement is "content-based" because "[b]y compelling individuals to speak a particular message, such notices "alte[r] the content of [their] speech." *National Institute of Family and Life Advocates v. Becerra,* 138 S.Ct. 2361, 2371 (2018) ("*NIFLA*") (quoting *Riley v. National Federation of Blind of N. C., Inc.*, 487 U.S. 781, 795 (1988). "The Supreme Court has emphasized that there is no constitutional difference between 'compelled statements of opinion' and 'compelled statements of fact' because 'either form of compulsion burdens protected speech.'" *Washington Post v. McManus*, 944 F.3d 506, 518 (4th Cir. 2019) (quoting *Riley*, 487 U.S. 797-98). In every sense of the word, Bill 108-21 seeks to compel the speech of dealers by forcing them, upon pain of a substantial civil fine, to act as an agent for the speech that the County wishes to promote and sponsor.

Bill 108-21 does not purport to regulate commercial speech of the plaintiff dealers because the County's literature "is not limited to 'purely factual and uncontroversial information about the

terms under which ... services will be available.'" *NIFLA*, 138 S.Ct. at 2372 (quoting and distinguishing *Zauderer v. Office of Disciplinary Counsel of Supreme Court of Ohio*, 471 U.S. 626, 651 (1985)). Opinions vary widely concerning "gun safety, gun training, suicide prevention, mental health, and conflict resolution." Nothing in the County's literature concerns or purports to regulate any conduct of the dealers. *NIFLA,* 138 S.Ct. at 2372. The display and distribution requirements of Bill 108-21 have no purpose other than to commandeer dealers and other sellers of ammunition into acting as conduits for the opinions and messages adopted by the County.

Bill 108-21 violates the First Amendment's prohibition on compelled speech by compelling the plaintiff dealers to display and distribute the County literature and thus act as involuntary conduits for the County's message "relating to gun safety, gun training, suicide prevention, mental health, and conflict resolution." Bill 108-21 also violates plaintiff dealers' First Amendment right "not to speak" on such subjects, as the plaintiff dealers are compelled by Bill 108-21 to display and distribute the County's literature. By compelling the plaintiff dealers to display and distribute the County's literature, Bill 108-21 violates the First Amendment by forcing the plaintiff dealers either to appear to agree with the County's literature or respond to the County's literature by affirmatively speaking where the plaintiff dealers might well prefer to remain silent.

Bill 108-21 also violates the First Amendment rights of customers of dealers, including MSI members, because customers are chilled in the exercise of their own First Amendment rights by the forced distribution of the County's literature to such customers. Specifically, recipients of such official communications from the County will objectively be less willing to articulate their own views "relating to gun safety, gun training, suicide prevention, mental health, and conflict resolution," especially where, as here, the dealer is the distributor and thus may be reasonably understood to endorse the views of the literature that Bill 108-21 compels the dealer to distribute and display. As

- 9 -

explained infra, Part III, customers wishing to exercise their Second Amendment rights to purchase firearms and/or ammunition, are forced to participate in the County's distribution scheme every time such a purchase is made, and indeed, every time the customer merely visits a dealer who is forced to display the County literature.

## III.  EACH OF THE PLAINTIFFS HAS STANDING TO SUE

### A.   Plaintiff Dealers Have Standing

Each of the plaintiffs in this case has standing to challenge Bill 108-21. Each of the plaintiff dealers has Article III standing to sue on its own behalf as each dealer is directly regulated by Bill 108-21. See *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561-62 (1992) ("Where "the plaintiff is himself an object of the action ... there is ordinarily little question that the action or inaction has caused him injury, and that a judgment preventing or requiring the action will redress it."). See also *Maryland Shall Issue, Inc. v. Hogan,* 971 F.3d 199, 212-13 (4th Cir. 2020) (applying *Lujan* to sustain standing of a plaintiff firearms dealer). Each plaintiff dealer also has standing to sue on behalf of its customers and "other similarly situated persons" for injuries inflicted by Bill 108-21. *Maryland Shall Issue, Inc.*, 971 F.3d at 216. If one plaintiff has standing, it is unnecessary to determine the standing of other plaintiffs. (Id., 971 F.3d at 214 & n.5). *Bowsher v. Synar*, 478 U.S. 714, 721 (1986) (same).

Each of the plaintiff dealers is chilled in the exercise of its Amendment rights and thus has been injured by Bill 108-21. "[I]in First Amendment cases we have relaxed our rules of standing without regard to the relationship between the litigant and those whose rights he seeks to assert precisely because application of those rules would have an intolerable, inhibitory effect on freedom of speech." *Thornhill v. Alabama*, 310 U.S. 88, 97-98 (1940) (quoted in *Munson*, 467 U.S. at 957 n.7). *Cooksey v. Futrell*, 721 F.3d 226, 235 (4th Cir. 2013) ("The Supreme Court of the United States has explained that standing requirements are somewhat relaxed in First Amendment cases."); *Benham*

- 10 -

*v. City of Charlotte*, 635 F.3d 129, 135 (4th Cir. 2011) (noting that a "cognizable injury under the First Amendment is self-censorship, which occurs when a claimant is chilled from exercising her right to free expression") (internal quotation marks omitted). Customers and persons intending to purchase firearms and/or ammunition in the County, including MSI members, have standing under these principles.

Bill 108-21 went into effect on April 10, 2022, and there is no indication that the County will not fully enforce its provisions. The plaintiff dealers have received the County's literature and are expected to comply with Bill 108-21, and do so only to avoid the fines imposed by Bill 108-21. See Declarations of plaintiff dealers at ¶ 3. With each passing day, the plaintiffs suffer irreparable harm to their rights because of Bill 108-21. *Elrod v. Burns*, 427 U.S. 347, 373 (1976) ("loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury"). "An allegation of future injury may suffice if the threatened injury is 'certainly impending,' or there is a 'substantial risk' that the harm will occur." *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158 (2014) (citation omitted). See also *Davidson v. Randall*, 912 F.3d 666, 678 (4th Cir. 2019).

### B.  MSI Has Representational Standing

This Court need not reach the standing of Maryland Shall Issue, as each of the plaintiff dealers has standing to sue on its own behalf and on the behalf of its customers. *Maryland Shall Issue, Inc.*, 971 F.3d at 214, n.5, & 216. That said, MSI likewise has standing to sue on behalf of its members who visit or do business with Anne Arundel County dealers and sellers of ammunition and who are thus subject to the forced receipt or display of literature required by Bill 108-21. See *Hunt v. Washington State Apple Advert. Com'n,* 432 U.S. 333, 342 (1977); *Warth v. Seldin*, 422 U.S. 490, 511 (1975) ("[S]o long as the nature of the claim and of the relief sought does not make the individual participation of each injured party indispensable to proper resolution of the cause, the association may

be an appropriate representative of its members, entitled to invoke the court's jurisdiction."). See also *Retail Industry Leaders Ass' v. Fielder*, 475 F.3d 180, 186 (4th Cir. 2007) ("[a]ssociational standing may exist even when just one of the association's members would have standing").

MSI has one or more individual members who live in Anne Arundel County and/or have purchased and/or intend to purchase firearms and/or ammunition from dealers in Anne Arundel County. Each of MSI's members who do business at Anne Arundel County firearms dealers are injured by the forced display and receipt of County literature when they exercise their Second Amendment right to purchase firearms or ammunition from Anne Arundel County dealers. The interests that MSI seeks to protect are germane to MSI's purpose and neither the claims asserted herein nor the relief requested require the participation of MSI's individual members. MSI seeks only prospective injunctive and declaratory relief (not damages) on behalf of its members who have purchased or may purchase firearms and/or ammunition from Anne Arundel County dealers and outlets that are subject to Bill 108-21. See *United Food and Commercial Workers Union Local 751 v. Brown Group, Inc.*, 517 U.S. 544, 546 (1996).

The harms inflicted by Bill 108-21 are multifaceted. The Second Amendment protects "the right of law-abiding, responsible citizens to use arms in defense of hearth and home." *District of Columbia v. Heller*, 554 U.S. 570, 635 (2008). That right is fundamental and thus fully incorporated as against the States under the Fourteenth Amendment. *McDonald v. City of Chicago*, 561 U.S. 742, 767 (2010) (holding that "the right to keep and bear arms is fundamental to our scheme of ordered liberty"). Law-abiding, responsible citizens have a Second Amendment right to purchase firearms. *Teixeira v. City of Alameda*, 873 F.3d 670, 677 (9th Cir. 2017) (en banc), *cert. denied*, 138 S.Ct. 1988 (2018) ("the core Second Amendment right to keep and bear arms for self-defense 'wouldn't mean much' without the ability to acquire arms"). Law-abiding responsible

citizens have a Second Amendment right to purchase ammunition. *Jackson v. City and County of San Francisco*, 746 F.3d 953, 967 (9th Cir. 2014), *cert. denied*, 576 U.S. 1013 (2015) ("without bullets, the right to bear arms would be meaningless").

Restraints on dealers necessarily affect customers of dealers. As a matter of federal law, the acquisition of firearms generally takes place through licensed dealers. See, e.g., 18 U.S.C. § 922(a)(3),(5), § 922(b)(3). Maryland law also provides that a private sale of a long gun to non-family members can only be accomplished through a federal NICS background check as facilitated by a federally licensed dealer, such as the plaintiff dealers. MD Code, Public Safety, § 5-204.1. A private sale of a handgun may likewise be facilitated by a State licensed dealer, such as plaintiff dealers. MD Code, Public Safety, § 5-124(a)(1). While ammunition need not be sold through dealers, it is common knowledge and a matter of common sense that such sales often take place through dealers, either in stand-alone sales, or in connection with the sale of a firearm. Each of the plaintiff dealers in this case thus stocks and sells ammunition. Complaint ¶¶ 10-13. See *Celotex Corp.*, 477 U.S. at 326 (employing "common sense" in a summary judgment context); *Haze v. Harrison*, 961 F.3d 654, 659 (4th Cir. 2020) (same).

Because Bill 108-21 applies to all sellers of firearms and ammunition in Anne Arundel County, and because, as a practical matter, customers must use licensed dealers to purchase firearms, such purchasers of firearms and ammunition are effectively held captive to the County's distribution of its literature if they wish to exercise their Second Amendment right to purchase firearms and ammunition. Cf. *Hill v. Colorado*, 530 U.S. 703, 717-18 (2000) ("The unwilling listener's interest in avoiding unwanted communication has been repeatedly identified in our cases" and this interest is especially placed at risk where "'the degree of captivity makes it impractical for the unwilling viewer or auditor to avoid exposure'"). Such purchasers, as a practical matter, are thus unable to avoid

exposure to unwanted speech by the County if they wish to exercise this fundamental constitutional right in the County.

The chilling effect of Bill 108-21 is thus two fold. First, customers are chilled in the exercise of their own speech because they will objectively be less willing to articulate their own views "relating to gun safety, gun training, suicide prevention, mental health, and conflict resolution," where the dealer is the distributor and thus may be reasonably understood to endorse the views of the literature required by Bill 108-21. Second, customers are chilled in the exercise of their Second Amendment rights because such exercise is conditioned on the forced receipt of the County's literature. The County may not chill the exercise of First Amendment rights by burdening Second Amendment rights or *vice versa*. Cf. *Perry v. Sindermann*, 408 U.S. 593, 597 (1972) (a government "may not deny a benefit to a person on a basis that infringes his constitutionally protected interests especially, his interest in freedom of speech"); *Elrod*, 427 U.S. at 359 (same). The County may not condition a customer's access to a dealer's store or condition the dealer's operation upon the dealer's and the customer's acquiescence to the County's forced display and distribution of its message.

These harms are sufficient injury to confer standing on customers, including MSI members, who purchase or who intend to purchase, firearms or ammunition from Anne Arundel County dealers. *Secretary of State of Md. v. Joseph H. Munson Co., Inc.* 467 U.S. 947, 956-57 (1984) ("'Litigants, therefore, are permitted to challenge a statute not because their own rights of free expression are violated, but because of a judicial prediction or assumption that the statute's very existence may cause others not before the court to refrain from constitutionally protected speech or expression.'") (quoting *Broadrick v. Oklahoma*, 413 U.S. 601, 612 (1973)).

## IV. RELIEF REQUESTED

Pursuant to 42 U.S.C. § 1983, plaintiffs are entitled to injunctive and declaratory relief and nominal damages for the foregoing violations of their rights. *Uzuegbunam v. Preczewski*, 141 S.Ct. 792 (2021). Plaintiffs are also entitled to an award of attorneys' fees and costs pursuant to 42 U.S.C. § 1988. However, attorney fees are collateral to the merits and thus may be addressed separately at a future time. See, e.g*., Budinich v. Becton Dickinson & Co*., 486 U.S. 196, 199-200 (1988). A TRO and a preliminary injunction, enjoining the defendant from enforcing Bill 108-21, is essential to maintain the *status quo* pending further litigation. In the alternative, the Court should enter summary judgment to plaintiffs, awarding declaratory relief that Bill 108-21 violates the First Amendment rights of plaintiffs and enter a final permanent injunction enjoining defendant from enforcing Bill 108-21.

Given the difficulty of showing actual monetary damages at this early stage of the proceeding, the plaintiff dealers should be awarded nominal damages for the foregoing violations of their rights. *Uzuegbunam*, 141 S.Ct. at 800 ("the prevailing rule, 'well established' at common law, was 'that a party whose rights are invaded can always recover nominal damages without furnishing any evidence of actual damage.'") (citation omitted). See also *Carey v. Piphus*, 435 U.S. 247, 266 (1978) (a violation of constitutional rights is "actionable for nominal damages without proof of actual injury"). The rights of each of the plaintiff dealers have already been invaded by the forced distribution of the County literature every day that the dealers have been open for business since the April 10, 2022, effective date of Bill 108-21. Those violations are complete and every additional day of compelled compliance creates a new violation. Nominal damages of $1.00 for each day that each of the plaintiff dealers have been subjected to the requirements of Bill 108-21 are thus appropriate. See *Williams v. Hobbs*, 662 F.3d 994, 1010-11 (8th Cir. 2011) (holding that nominal damages are measured by

reference to each constitutional violation). Again, MSI seeks only prospective declaratory and equitable relief (not damages) on behalf of its members who are customers. There is every reason to enter summary judgment in this case without further ado and thus resolve this matter expeditiously.

## CONCLUSION

For all the forgoing reasons, plaintiffs' motion for a TRO and a preliminary injunction should be granted. In the alternative, the Court should enter summary judgment in favor of plaintiffs on the merits and enter permanent injunctive and declaratory relief.

Respectfully submitted,

MARK W. PENNAK
MARYLAND SHALL ISSUE, INC.
9613 Harford Rd
Ste C #1015
Baltimore, MD 21234-21502
mpennak@marylandshallissue.org
Phone: (301) 873-3671
MD Atty No. 1905150005
District Court Bar No. 21033

EDWARD N. HERSHON
HERSHON LEGAL, LLC
420-I Chinquapin Round Rd.
Annapolis, MD 21401
ed@hershonlegal.com
Phone: (443) 951-3093
MD Atty No. 9306230157
District Court Bar No. 22606

*Counsel for Plaintiffs*